UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

**Eastern District of Kentucky**
**F I L E D**

JAN 2 4 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-85-GWU

RAYMOND HESS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hess

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.     See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Hess

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Hess

physical and mental impairments.   Varley   v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Raymond Hess, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of major depression, estimated
borderline intellectual functioning, post-traumatic stress disorder, loss of hearing in
the left ear, chronic low back pain due to degenerative disc disease of the lumbar
spine, chronic musculoskeletal neck pain (status post a motor vehicle accident), and
recurrent skin rashes.  (Tr. 23).  Nevertheless, based in part on the testimony of a
vocational expert (VE), the ALJ determined that Mr. Hess retained the residual
functional capacity to perform a significant number of jobs existing in the economy
and, therefore, was not entitled to benefits.  (Tr. 25-8).  The Appeals Council
declined to review, and this action followed.

At an administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age of 53 years, eighth-grade education, and work experience as a
truck driver and coal mine shuttle car driver could perform any jobs if he were limited
to "medium" level exertion, and also had the following non-exertional impairments.
(Tr. 617).  He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally
bend, twist, kneel, crouch, crawl, and climb ramps or stairs; (3) could not operate
foot pedal controls or work in excessively noisy environments or where acute hearing
was required; and (4) required entry level work with simple 1-2-3 step procedures,

7

no frequent changes in work routines, no requirements for problem solving, independent planning, or setting of goals, and only occasional interaction with co-workers, supervisors, or the general public. (Id.). The VE responded that there were jobs that such a person could perform at the "medium" and "light" levels, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 617-18).

On appeal, this Court must determine whether the hypothetical factories selected by the ALJ are supported by substantial evidence.

Mr. Hess alleged disability due to back, hip, and leg pain and a nervous condition resulting from a motor vehicle accident on April 18, 2002, in which his tractor-trailer was hit by a drunk driver, who was killed. (Tr. 103, 562, 567). Despite therapy and medication, and realizing that he was not at fault for the accident, he continued to have flashbacks and nightmares due to the accident, was unable to sleep, and was too nervous to drive or be around people. (Tr. 571-5). He had pain in his lower back and hips, and received medication from Dr. Tariq Nazir as well as adjustments from a chiropractor. (Tr. 569-70). The hip problem caused him to fall down, about twice a week. (Id.).

Conflicting medical evidence was submitted from examining and treating sources regarding the extent of the plaintiff's problems. On appeal, the plaintiff makes only two specific arguments regarding the ALJ's resolution of the conflicts.

8

First, the plaintiff argues that it was error for the ALJ to reject the opinion given in a November 11, 2002 letter from Dr. Razvan Valda, identified as a psychiatrist at Kentucky River Community Care (KRCC). The letter states that Mr. Hess "has been a patient of our clinic and I met with him twice for the past five weeks" and, in the psychiatrist's opinion, "he is unable to work due to severe anxiety and depression." (Tr. 538). The plaintiff maintains that the ALJ's rationale for rejecting this opinion was merely that such opinions are "reserved for the Commissioner of the Social Security Administration." (Tr. 24). However, as the plaintiff admits, the ALJ went on to discuss the opinions of non-examining state agency reviewers and the opinion of a consultative psychological examiner, Dr. Robert Fitz. (Id.). While the ALJ may not have specifically stated that he was accepting the opinion of Dr. Fitz, who reviewed extensive prior evidence, conducted a personal examination, and gave a detailed functional capacity assessment (Tr. 523-34) over that of Dr. Valda, it is adequately clear from the context that his intention was to do so. Moreover, it is highly questionable from the record submitted whether Dr. Valda could be considered a treating source, given that his letter appears to indicate that he had seen the plaintiff on two occasions over the past five weeks. (Tr. 538). If the psychiatrist had seen the plaintiff more than twice, it cannot be determined from a review of the KRCC notes from 2002, many of which are almost illegible in the Court transcript and do not contain clear signatures. (E.g. Tr. 266, 387-8). Finally, although the ALJ's stated reason for declining to accept the

9

Hess

opinion of the psychiatrist may not have been couched in ideal terms, the opinion was a vocational conclusion outside his area of expertise, rather than a report giving his diagnoses, the severity of the plaintiff's condition, and functional limitations. For all these reasons, the plaintiff's first argument is without merit.

The plaintiff's second argument is that the ALJ had a duty to recontact the plaintiff's treating internal medicine physician, Dr. Nazir. Dr. Nazir had given a deposition on August 4, 2004, stating that he had personally treated the plaintiff between May, 2002 and June, 2004. (Tr. 459-60). Although he felt that the plaintiff's main problem was severe depression, Dr. Nazir also reported Mr. Hess had x-rays showing degenerative disc disease and narrowing of the L5-S1 disc, as well as muscle spasms on physical examination. (Tr. 461, 463). Dr. Nazir stated that he did not believe that Mr. Hess was physically or mentally capable of going back to the "level of work he did prior to the accident," and that he "probably" would have difficulty maintaining attention and concentration and "may not be able to work on an eight-hour shift five days a week." (Tr. 469). The ALJ stated that physician's treatment notes (Tr. 304-7, 481-501) did not reflect any muscle spasms on examination, and, in addition, Dr. Nazir was "not a psychiatrist." (Tr. 24). The plaintiff asserts that the ALJ had a duty to recontact the treating physician for clarification, citing a portion of 20 C.F.R. Section 404.1512(e), stating that:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach

10

Hess

a determination or a decision. To obtain the information, we will take
the following actions. We will first recontact your treating physician or
psychologist or other medical source to determine whether the
additional information we need is readily available. We will seek
additional evidence or clarification from your medical source when the
report from your medical source contains a conflict or ambiguity that
must be resolved, the report does not contain all the necessary
information, or does not appear to be based on medically acceptable
clinical and laboratory diagnostic techniques.

The Commissioner reasonably responds that the principal issue is that no additional

statements from Dr. Nazir could clarify the fact that his office notes did not support

his statement that he had observed muscle spasms, or that other physical

examinations by Dr. David Muffly, Dr. Tony Mancuso, and by Dr. Thadis Cox found

few abnormalities and concluded that the plaintiff would have essentially no physical

restrictions. (Tr. 259-61, 351-2, 515-22). Therefore, the evidence from Dr. Nazir

was not "inadequate for [the Commissioner] to determine" whether Mr. Hess was

disabled. The Court also notes that Section 404.1512 clearly places the primary duty

on the claimant to prove his own case.

The decision will be affirmed.

This the _24_ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE

11